IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALICE STARR, AS EXECUTOR OF THE ESTATE OF THOMAS JACKSON BOWLING,<br><br>    Plaintiff,<br><br>v.<br><br>THE CLEVELAND-CLIFFS IRON COMPANY, ET AL.,<br><br>    Defendants. | Case No. 1:19-cv-00106<br><br>Judge Dan Aaron Polster<br><br>**OPINION & ORDER** |

  Before the Court is a defendant's motion for summary judgment on Count I of the complaint.  ECF Doc. 25.  This admiralty case arises from the asbestos-related death of a former merchant mariner.  ECF Doc. 1, p. 3.  The plaintiff is the deceased mariner's younger sister, and she asserts that she is a next of kin beneficiary under the Jones Act.  ECF Docs. 25, p. 5; 26, p. 5.  The defendant disputes the plaintiff's dependency status.  ECF Doc. 25.  For the following reasons, the defendant's motion for summary judgment is GRANTED.

## Background

  The plaintiff, Alice Starr, is the executor of her deceased brother's estate.  She brought a survival action in Count I under 46 U.S.C. § 30104, the Jones Act, against the defendant, The Cleveland-Cliffs Iron Company ("Cleveland Cliffs").  ECF Doc. 1, pp. 8-10.  The plaintiff alleges that her brother, Thomas Jackson Bowling, died from asbestos-related cancer and suffered asbestos exposure while employed for the defendant.  ECF Doc. 1, pp. 2-3, 8-10.  Cleveland Cliffs admits that during 1973 to 1974, it employed Mr. Bowling on two separate occasions for approximately 65 days in total.  ECF Doc. 4, p. 2.  Mr. Bowling died of lung

1

cancer on January 17, 2017, at the age of 70. ECF Docs. 1, p. 2; 25-1, p. 12. Mrs. Starr was 60 years old when Mr. Bowling died. ECF Doc 25-1, p. 12.

**Procedural History**

On January 15, 2019, the plaintiff filed this complaint. ECF Doc. 1. On June 24, 2019, the defendant deposed Mrs. Starr. ECF Doc. 25-1. Approximately three months later, with the consent of both parties, the Court transferred this case to Magistrate Judge William H. Baughman. Non-doc. order, Sept. 25, 2019. In September 2021, Judge Baughman ordered the parties to file a motion addressing the threshold issue of whether Mrs. Starr was "dependent" on Mr. Bowling. ECF Doc. 24, p. 2. On October 18, 2021, Cleveland Cliffs filed a motion for an order as to dependency and summary judgment on Count I. ECF Doc. 25. The plaintiff responded on November 17, 2021. ECF Doc. 26. On November 30, 2021, the defendant filed a reply in support of its motion. ECF Doc. 27. On April 22, 2022, Magistrate Judge Baughman heard oral arguments via video conference. Non-doc. minutes of proceedings, Apr. 22, 2022. The Court obtained a written transcript of the proceeding. ECF Doc. 30. In early September 2022, this case returned to the Court due to Judge Baughman's retirement. Non-doc. order, Sept. 8, 2022.

There is no factual dispute between the parties as to the nature and extent of Mr. Bowling's relationship with his sister. ECF Doc. 30, p. 3. The defendant agrees with Mrs. Starr's assertions about the frequency, duration, and kind of support Mr. Bowling provided her. *Id*. at 3-7. Therefore, the issue before this Court is whether Mrs. Starr qualified as her brother's "next of kin dependent" at the time of his death, which is a predicate to recovery under the Jones Act.

The defendant asserts that dependency under the Jones Act requires financial dependency at the time of the decedent's death. ECF Docs. 25, p. 3; 27, p. 2. It argues that in-kind services alone do not constitute financial dependency. ECF Doc. 27, p. 4. The defendant frames the issue before the Court as "whether in-kind services alone, provided to a financially secure adult sibling, can support a finding of legal dependence." ECF Doc. 27, p. 4. Cleveland Cliffs argues that because Mrs. Starr was not financially dependent on Mr. Bowling when he died, she is not his dependent within the meaning of the Jones Act. ECF Doc. 25, p. 1.

The plaintiff disputes the defendant's assertion that dependency requires financial contributions or support. ECF Doc. 26, p. 5. Instead, she contends that "valuable services" are also relevant to a dependency determination. ECF Doc. 26, pp. 7-8. The plaintiff proposes a five-part dependency definition based on state and federal case law:

> (1) A voluntary status created before the death of the deceased;
> (2) where financial contributions or the furnishing of other valuable elements of support, such as sufficiently valuable services, are made by the deceased;
> (3) for the purpose of, and has the result of, helping to maintain the dependent in his or her customary standard of living; and
> (4) said dependent relies, in whole or in part, upon this aid; and
> (5) said dependent has a necessitous want for, and a reasonable expectation of pecuniary benefit in, the continuance of the life of the deceased.

ECF Doc. 26, p. 12.

## Standard of Review

A district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To obtain summary judgment, the moving party bears the burden to meet this standard. *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019). Summary judgment is inappropriate if there are genuine disputes of material fact—*i.e.*, the

parties dispute any fact that has the potential to affect the outcome of the case under the governing substantive law. *Baynes v. Cleland*, 799 F.3d 600, 606-07 (6th Cir. 2015).

When determining whether a genuine dispute of material fact exists, a district court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2018)). The reviewing court may neither weigh the parties' evidence nor resolve any factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's review is limited to determining whether there is evidence that could lead a reasonable jury to return a verdict in favor of the non-moving party. *Doe v. Metropolitan Gov't of Nashville & Davidson Cnty. Tenn.*, 35 F.4th 459, 463 (6th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

## **Analysis**

The Jones Act permits an injured or deceased seaman's personal representative to bring a civil action against the seaman's employer. 46 U.S.C. § 30104. The Jones Act incorporates by reference the Federal Employers' Liability Act ("FELA"). *Id.*; *see also Lindgren v. U.S.*, 281 U.S. 38, 40 (1930). Under the FELA, a personal representative may bring a claim for the benefit of "the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." 45 U.S.C. § 59. Mr. Bowling never married, never had any children, and his parents predeceased him. ECF Doc. 26, p. 2. Accordingly, the relevant language in the FELA is "the next of kin dependent upon such employee." 45 U.S.C. § 59. Neither party contests that Mrs. Starr is Mr. Bowling's next of kin; however, she must also be "dependent" upon him to recover under the Jones Act. ECF Docs. 25, pp. 4-5; 26, pp. 2, 5.

Turning to the issue of dependency, the FELA does not define "dependent." The Sixth Circuit has not defined the term or provided controlling case law on Jones Act dependency. Therefore, the Court must first apply the basic rules of statutory construction.

The Court reads the statutory text "in light of [its] plain meaning." *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 (6th Cir. 1994) (citing *Baum v. Madigan*, 979 F.2d 438, 441 (6th Cir. 1992)). The Court applies the ordinary and common-held meaning of the word "dependent." *Id*. A dependent "is one who is sustained by another, or relies for support upon the aid of another." *Pittsburgh Nat'l Bank v. Penn. R.R. Co.*, 315 F.2d 606, 608 (3d Cir. 1963) (citing *Atchison, T. & S. F. Ry. Co. v. Hopkins*, 24 Ariz. 103, 207 P. 66, 69 (1922)).

Second, the Court considers how other Circuits and district courts have defined and analyzed the issue of dependency. Courts have examined the concept of Jones Act dependency under the FELA and analogous federal maritime statutes that provide recovery for specified dependent relatives, such as 46 U.S.C. § 30301, the Death on High Seas Act ("DOHSA"), and 33 U.S.C. § 901, the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See In re U.S.*, 418 F.2d 264, 271 (1st Cir. 1969) ("The [LHWCA and DOHSA] statutes are both intended to compensate persons for the pecuniary loss resulting from the death of one covered by the Act. Therefore the construction given a term under one is instructive as to how it should be read under the other."); *In re Complaint of Conn. Nat'l Bank*, 1989 U.S. Dist. LEXIS 15031, at *6 (S.D.N.Y. Dec. 15, 1989) ("Although the Second Circuit has not set forth the test for dependency to be used in DOHSA actions, it described dependency under the Longshoremen's and Harbor Workers' Compensation Act.").

The common thread in the following cases is that the decedent made financial contributions to the beneficiary at the time of the decedent's death. For example, the Sixth

5

Circuit upheld Jones Act awards because the decedents provided "regular" "financial contribution[s]" that "contribute[d] to the financial well-being" of the next of kin. *Cleveland Tankers, Inc. v. Tierney*, 169 F.2d 622, 625 (6th Cir. 1948). Similarly, the Third Circuit denied recovery under the FELA because the surviving brother was "gainfully employed and was not dependent on [the decedent] for support, maintenance, care, or otherwise." *Pittsburgh Nat'l Bank*, 315 F.2d at 611. Additionally, dependency "arises from an actual condition of financial need." *Id*.

The Second Circuit upheld recovery under the LHWCA because without the decedent son's financial contributions, the surviving parents' "own resources [were] not sufficient to support them." *Wende v. McManigal*, 135 F.2d 151, 152 (2d Cir. 1943).

The First Circuit found that a decedent's stepchild was a dependent relative under the DOHSA because the child relied on the decedent's financial "means of support." *In re United States*, 418 F.2d 264, 270-71 (1st Cir. 1969). The court adopted a test that requires that "contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent in his customary standard of living." *Id*. at 272 (quoting *U.S. Fid. & Guar. Co. v. Britton*, 88 U.S. App. D.C. 293, 188 F.2d 674, 675 (1951)). Finally, the dependency relationship must exist at the time of the decedent's death. *Id*.; *see also Pa. Nat'l Bank*, 315 F.2d at 611 (also requiring dependency at the time of the decedent's death).

The District Court for Rhode Island analyzed the matter of dependency under the FELA and focused on the surviving parents' full employment and the fact that "[n]either had received, nor in the future expected to receive, any financial contributions from [the decedent]." *Rollins v. Peterson Builders, Inc.*, 761 F. Supp. 918, 920 (D.R.I. 1990).

6

The District Court for the Southern District New York upheld a Jones Act and FELA award for surviving siblings, where the decedent contributed $1,100 annually to support them. *Strehle v. United States*, 860 F. Supp. 136, 139 (S.D.N.Y. 1994). "Dependency refers to contribution 'in whole or in part' in maintaining the manner in which the dependent was living." *Id*. (quoting *Hollie v. Korean Air Lines Co.,* No. 83CIV.7899(PNL)(NRB), 1994 WL 38785, at *1 (S.D.N.Y. Feb. 7, 1994), *aff'd*, 60 F.3d 90 (2d Cir. 1995), *cert. granted, judgment vacated*, 516 U.S. 1088, 116 S. Ct. 808 (1996)).

In another case, the District Court for the Southern District of New York denied recovery for the decedent's relatives under the DOHSA because the decedent's birthday and holiday presents, holiday meals, and volunteer farm work were "gifts." *In re Complaint of Conn. Nat'l Bank*, Nos. 86CIV.8358(RLC), 89 CIV.621(RLC), 1989 U.S. Dist. LEXIS 15031, at *4-5 (S.D.N.Y. Dec. 15, 1989). Additionally, the decedent did not provide his relatives "money or necessity items on a regular and systematic basis." *Id*. at *8.

The District Court for the Eastern District of Louisiana denied recovery under the DOHSA to a surviving mother because the decedent's financial contributions occurred at "irregular intervals" and were not "sufficiently regular and substantial" to maintain her standard of living. *Billiot v. Fox Seafood, Inc.*, Civil Action No. 87-4801, 1988 U.S. Dist. LEXIS 5905, at *9, *10 (E.D. La. June 23, 1988).

The District Court for the Western District of Michigan upheld a finding of dependency under the LHWCA where the decedent supplemented his parents' income with weekly payments because they "were dependent to some extent for their support upon [the] deceased." *Michigan Transit Corp. v. Brown*, 56 F.2d 200, 203 (W.D. Mich. 1929).

7

The above cases demonstrate that federal courts take a substantially similar approach to the issue of dependency under the Jones Act, FELA, DOHSA, and LHWCA. The courts decisively center their analysis on the financial component of the decedent-beneficiary relationship, at the time the decedent died. While the plaintiff suggests the Court apply a five-part dependency test, she cites no cases that have adopted this approach. Similarly, the plaintiff cites no cases where a court found a dependency relationship without finding that a decedent financially contributed to the beneficiary at the time of the decedent's death. The Court did not find any such cases.

Mrs. Starr's deposition testimony is the plaintiff's primary evidence of her dependency on Mr. Bowling. ECF Doc. 25-1. The plaintiff asserts that Mr. Bowling provided seven categories of contributions to Mrs. Starr, including: "(1) child supervision/caregiving/ transportation; (2) household/appliance maintenance; (3) rental property maintenance/ management; (4) computer repair/maintenance; (5) caregiving to Mrs. Starr for health issues; (6) utility payments and food; and (7) shared bank account." ECF Doc. 26, p. 3.

There is no evidence that Mrs. Starr was financially dependent upon Mr. Bowling at the time of his death. For several years prior to Mr. Bowling's death, Mrs. Starr and her husband had a combined income of approximately $150,000 per year, while Mr. Bowling made $13,000 per year. ECF Doc. 25-1, p. 110. Mr. Bowling did not give Mrs. Starr money to pay her bills or sustain her lifestyle. He did not contribute to her mortgage, utility bills, or personal loans. *Id*. at 50. Occasionally, Mr. Bowling borrowed money from Ms. Starr and would eventually pay her back. *Id*. at 88-89. Mrs. Starr admits that she did not financially depend on her brother for her day-to-day expenses. *Id*. at 110-12.

Viewing the evidence in the light most favorable to Mrs. Starr, at the time of her brother's death, Mr. Bowling only provided Mrs. Starr emotional support and non-monetary assistance. When Mr. Bowling died in January 2017, Mrs. Starr's three children were 34, 27, and 23 years old. ECF Docs, 25-1, p. 10; 27, p. 3. There is no evidence that, at time of his death, Mr. Bowling supervised, transported, or cared for Mrs. Starr's adult children. ECF Doc. 25-1, pp. 27, 33. Therefore, Mr. Bowling was not providing Mrs. Starr any childcare assistance when he died. *Id*. Similarly, Mr. Bowling's caregiving services to Mrs. Starr occurred well before his death. When Mrs. Starr was pregnant, he took her to the hospital for a cesarean delivery. ECF Doc 25-1 at 42. In 2011 and 2014, Mr. Bowling cared for Mrs. Starr when she had knee replacement surgery and triple bypass heart surgery. *Id*. at 35-36.

The evidence that is closest to financial assistance is when Mr. Bowling moved in with Mrs. Starr. In June 2016, Mr. Bowling's trailer flooded, and he moved into Mrs. Starr's home. *Id*. at 37-38. Mr. Bowling contributed toward Mrs. Starr's utility and food bills while he stayed with her. *Id*. at 50. However, the money he paid was compensation for the utilities he used and the food he ate. Additionally, Mr. Bowling and Mrs. Starr also shared a checking account around the time of his death; however, there is no evidence that Mrs. Starr ever withdrew money from the account. *Id*. at 46.

Lastly, there is evidence that Mr. Bowling repaired household appliances and fixed Mrs. Starr's computer. *Id*. at 43, 52, 77. In 2016, Mr. Bowling replaced a broken built-in oven in one of Mrs. Starr's mobile homes. *Id*. at 77-78. She did not give a timeframe for the computer services, and it is unclear when Mr. Bowling performed them. Generally, replacing a broken stove, updating a computer, buying a new motherboard, and upgrading computer memory are isolated and infrequent occurrences that may take hours or even days to resolve—but not weeks

or months. Consequently, Mr. Bowling's appliance and computer related services were not sufficiently regular and substantial to be considered necessary to sustain his sister's standard of living.

The record reflects that up until Mr. Bowling passed, he helped manage and maintain Mrs. Starr's rental properties. *Id*. at 34. Mrs. Starr testified that Mr. Bowling spent about twenty hours per week helping her. *Id*. at 43. However, Mr. Bowling's assistance and support to Mrs. Starr did not arise from her actual financial need. Mrs. Starr and her husband were independent, self-sufficient, and able to support their lifestyle without Mr. Bowling's in-kind assistance. Rather, Mr. Bowling reciprocated Mrs. Starr's own generosity to him, as any close sibling would.

Mrs. Starr refers to Mr. Bowling as a "surrogate dad" for her kids and as a "surrogate husband" who was "always there to help" and "[pick] up all the slack." ECF Doc. 25-1 at 28. But Mr. Bowling's assistance to Mrs. Starr's children occurred many years before his death, when they were younger and lived with Mrs. Starr. Mr. Bowling made Mrs. Starr's life "easier" and "better." *Id*. at 52. She trusted her brother and relied upon him emotionally, but she did not depend on him financially. Mrs. Starr accepted Mr. Bowling's help and support because they were expressions of his affection. Accordingly, Mrs. Starr was not financially dependent on her brother at the time of his death, and, therefore, she is not a next of kin dependent under the Jones Act.

**Conclusion**

The defendant's motion for summary judgement on Count I of the complaint is GRANTED.

**IT IS SO ORDERED.**

Date: September 30, 2022

/s/ *Dan Aaron Polster*
Dan Aaron Polster
United States District Judge